**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 10-23091-CIV-SEITZ/SIMONTON

COLONY INSURANCE COMPANY,

          Plaintiff,

vs.

TOTAL CONTRACTING & ROOFING, INC.,
DAVID SMITH and WENDY SMITH,

          Defendants,

_____/

## ORDER GRANTING COLONY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

This case involves an insurance coverage dispute. Defendants David and Wendy Smith have sued Defendant Total Contracting & Roofing in the Chinese-Manufactured Drywall Products Liability Litigation (MDL No. 2047) currently pending in the Eastern District of Louisiana. The Smiths seek damages for injuries arising out of Total Contracting's installation of defective drywall in the Smiths' Miami Beach home. Colony Insurance Company issued four Commercial General Liability Insurance Policies to Total Contracting and has afforded Total Contracting a defense against the Smiths' claims. Colony filed this suit seeking a declaration that it owes no duty to indemnify Total Contracting for those claims. The Court has previously dismissed a counterclaim filed by the Smiths because, as third-parties to this liability insurance contract, they are barred under Florida law from maintaining a cause of action against Colony until they have a verdict or settlement with Total Contracting. *See* Order of Dec. 8, 2010 [DE-40]. The Clerk of the Court has entered default against Total Contracting for failing to appear or respond in this matter. [DE-46]. Currently before the Court are cross-motions for summary judgment filed by Colony and the Smiths. The parties concede the facts are not in dispute. For

the reasons set forth below, the Court will grant Colony's motion and enter judgment in favor of Colony and deny the Smiths' motion.

## I.     THE SMITHS' MOTION FOR SUMMARY JUDGMENT

The Smiths argue that their "Motion for Summary Judgment should be granted and judgment should be entered against Colony and in favor of the Smiths finding coverage under the subject policies." Mot., p. 12 [DE-54]. This argument, however, ignores the alignment of the parties and the Court's prior Order dismissing the Smiths' counterclaims. The Smiths are third-parties to the insurance contract at issue in this case, not insureds. And while a clerk's default has been entered against Total Contracting, that provides no basis for the Smiths to assume the role of the insured here and litigate this case as if they were Total Contracting. Moreover, the Court previously dismissed the Smiths' declaratory judgment counterclaims against Colony as barred by Florida Statute § 627.4136(1).[1] Order of Dec. 7, 2010 [DE-40]. The Court concluded that "[w]hile third-party claimants such as the Smiths can defend a declaratory judgment action against an insured, *see Monticello Ins. Co. v. Dynabilt Mfg. Co.*, 2005 WL 3019241, *3 (M.D. Fla. Nov. 10, 2005) [ ] the Smiths have not brought any authority to this Court's attention suggesting that they may raise their own claim against Colony at this time." *Id.* at p. 4. Advancing a motion for summary judgment that seeks the same relief as the counterclaim represents nothing more than an attempt to side-step the Court's prior Order dismissing the counterclaim. The Smiths may defend this case, and, if successful, the Court would have denied

---

[1]The statute, Florida Statute § 627.4136(1), provides:
It shall be a condition precedent to the accrual or maintenance of a cause of action against a liability insurer by a person not an insured under the terms of the liability insurance contract that such person shall first obtain a settlement or verdict against a person who is an insured under the terms of such policy for a cause of action which is covered by such policy.

Colony's request for a declaratory judgment. Defending the case, however, should not be confused with stepping into the shoes of the insured. The Smith's motion is therefore denied.[2]

## II.   COLONY'S MOTION FOR SUMMARY JUDGMENT

### 1.   UNDISPUTED FACTS

In June 2007, Total Contracting completed renovation work on the Smiths' home located at 5101 Lakeview Drive, Miami Beach, Florida 33140. *See* Colony's Resp. to Statement of Facts, ¶4 [DE-57]. During the renovation, Total Contracting allegedly installed defective Chinese manufactured drywall in the home. *Id.* at ¶3. On December 9, 2009, the Smiths sued Total Contracting for damages and injuries arising out of the installation of the defective Chinese manufactured drywall as part of an Omnibus Class Action in the United States District Court for the Eastern District of Louisiana styled *Payton v. Knauf Gips, KG*, No. 09-7628 as part of MDL 2047, *In re Chinese-Manufactured Drywall Products Liability Litigation*.[3] *Id.* at ¶¶6-7.

In that MDL case, the Smiths allege that the drywall installed by Total Contracting releases, emits, and/or off-gases "sulfides and other noxious gases." MDL Compl., ¶¶2611-12 [DE 9-1, p. 7 of 92]. They further allege that the "sulfides and other noxious gases" emitted from

---

[2]Had the Court reached the merits of the Smith's motion, there were several reasons to deny the motion, including their failure to properly support the motion with admissible evidence. Merely directing the Court to pleadings in another case and asking the Court to take judicial notice of certain "facts" reflects a fundamental misunderstanding of the procedure for obtaining summary judgment. *See* Fed. R. Civ. P. 56(c)(1) and (e). The Court must also reject the only legal argument advanced in support of the motion - that coverage under Colony's policies was completely illusory as a matter of law - for the reasons set forth *infra*.

[3]The Smiths' claims include negligence (Count I); negligence per se (Count II); strict liability (Count III); breach of express and/or implied warranties (Count IV); breach of the implied warranty of habitability (Count VI); breach of contract (Count VII); private nuisance (Count XI); negligent discharge of a corrosive substance (Count XII); unjust enrichment (Count XIII); violation of the Florida Deceptive and Unfair Trade Practices Act (Count XIV); and equitable and injunctive relief and medical monitoring (Count XV). *See* Omnibus Class Action Complaint [DE 9-1, pp. 537-557].

the defective drywall "cause corrosion and damage to personal property (such as air conditioning and refrigerator coils, faucets, utensils, electrical wiring, copper, electronic appliances and other metal surfaces and property)." *Id.* at ¶2612. Moreover, "[e]xposure to sulfide and other noxious gases, [ ] emitted from [ ] drywall, causes personal injury resulting in eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm." *Id.* at ¶¶2611-2613, 2615. The Smiths specifically describe the effects of the "sulfides and other noxious gases" as "extremely corrosive," "unreasonably dangerous," "hazardous," and "toxic." *Id.* at ¶¶2614-2615, 2620, 2743, 2763-2764. As a result, the Smiths have allegedly suffered damages, economic harm, and/or personal injury. *Id.* at ¶2618.

Colony issued four commercial general liability insurance policies to Total Contracting that were in effect from July 30, 2005, to July 30, 2009 (hereinafter referred to as "Policy" or "Policies"). *See* Colony's Resp. ¶13 [DE-57]. The Policies each provide that Colony "will pay those sums that the insured becomes obligated to pay as damages because of 'bodily injury' or 'property damage' to which the insurance applies." Compl., Ex E, Sect. I (1)(a) [DE 27-1 , p. 25 of 48]. Further, the insurance "applies to 'bodily injury' or property 'damage' only if" it is caused by an "occurrence" that takes place in the "covered territory" during the "policy period." *Id.* at Sect. I(b)(1)-(2). Each Policy includes a "Hazardous Materials Exclusion" that provides, in its entirety:

## HAZARDOUS MATERIALS EXCLUSION

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. SECTION 1- COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, f. and SECTION**

4

**1-COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions, n.** and **m**. are replaced by the following:

This insurance does not apply to:

**Hazardous Materials**

(1) "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "hazardous materials" at any time.

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "hazardous materials"; or

    (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "hazardous materials".

(3) Any obligations to share damages with or indemnify another party whom must pay damages because of injury or damage relating to "hazardous materials".

(4) Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with paragraphs (1), (2), or (3) above.

This exclusion applies whether or not such "hazardous material(s)" has any function in your business, operations, premises, site or location.

B. **SECTION V - DEFINITIONS** is amended and the following added: "Hazardous materials" means "pollutants", lead, asbestos, silica and materials containing them.

*See* Compl., Ex E, Hazardous Materials Exclusion, (A) Sect. I [DE 27-1 , p. 12 of 48]. The

Policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant,

including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." *Id.* Sect. V, ¶14 [DE

27-1, p. 38 of 48].

## 2.   LEGAL ANALYSIS

A Florida liability insurer has a duty to defend and a duty to indemnify. *See Pa.
Lumbermens Mut. Ins. v. Ind. Lumbermens Mut. Ins.*, 43 So.3d 182, 186 (Fla. 4th DCA 2010).
"[I]t is a well-settled rule that the allegations of the underlying complaint control an insurer's
defense obligations." *Sunshine Birds & Supplies v. U.S. Fid. & Guar. Co.*, 696 So.2d 907, 909
(Fla. 3rd DCA 1997).  The insured bears the burden of proving coverage. *LaFarge Corp. v.
Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir. 1997).  Once that burden is met, the
burden shifts to the insurer to prove that coverage is excluded by an applicable coverage
exclusion provision in the policy. *Id.*; *Castillo v. State Farm Florida Ins.*, 971 So. 2d 820, 824
(Fla. 3rd DCA 1997).  If the application of a policy exclusion is clear from the pleadings, the
insurer has no duty to defend. *See State Farm Fire & Cas. Co. v. Tippett,* 864 So.2d 31, 35 (Fla.
4th DCA 2003).  Where there is no duty to defend, there is no duty to indemnify.  *See Kenneth
Cole Productions, Inc. v. Mid-Continent Cas. Co.*, 763 F. Supp. 2d 1331, 1334 (S.D. Fla. 2010).

In construing an insurance contract, a "court must first examine the natural and plain
meaning of [the] policy's language." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1548-49 (11th Cir.
1996).  A court must read the contract "as a whole, endeavoring to give every provision its full
meaning and operative effect." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla.
2000).  Under Florida law, pollution exclusions in commercial general liability policies are not
limited to environmental pollution, but apply to any loss caused by a pollutant of any type -
household, outdoors, or otherwise. *Deni Assoc. of Florida, Inc. v. State Farm Fire & Cas. Ins.
Co.*, 711 So.2d 1135, 1137-38 (Fla. 1998); *see also Gen. Fid. Ins. Co. v. Foster*, No. 09-80743,

--- F.Supp. 2d ----, 2011 WL 3962646, *5 (S.D. Fla. Mar. 24, 2011)(Moore, J.)(rejecting argument that pollution exclusions are solely for coverage of damage or injury caused by environmental or industrial pollution).

 Colony's motion for summary judgment is limited to the first count of the declaratory judgment complaint, which seeks a declaration that no duty to defend exists because all of the Smiths' claims fall within the Hazardous Materials Exclusion. Compl., ¶¶16-20 [DE-1].[4]  For the purposes of this motion, Colony assumes that the Smiths' claims would be covered under the Policy but for the Hazardous Materials Exclusion, which Colony argues precludes coverage. Colony devotes extensive discussion in its papers to the allegations of the MDL Complaint and why those allegations fall within the purview of the Policy's Hazardous Materials Exclusion. Mot., pp. 11-18 [DE-53]. Colony basically maintains that the noxious gases and chemicals given off by Chinese manufactured drywall irritate and contaminate people and property, which is exactly the type of factual scenario contemplated and excluded by the Hazardous Materials Exclusion. *Id.* In response, the Smiths implicitly concede that the exclusion applies when they fail to dispute any aspect of Colony's analysis of this issue. *See* Smiths' Resp., pp 1-2 [DE-55]. Instead, the Smiths advance perhaps the only viable argument they possess - that the exclusions raised in Colony's Complaint for Declaratory Relief, when taken together, render coverage under the policies completely illusory. *See* Smiths' Resp., pp 1-2 [DE-55]. The Smiths argue that the Policy is unconscionable and violates public policy. *Id.* at p. 2 (citing *Purrelli v. State Farm Fire*

---

[4] The remaining counts in Colony's Complaint for Declaratory Relief are: Count II (some of the claims in the MDL case do not constitute "occurrences"); Count III (some of the claims are precluded by the "Expected or Intended Injury" exclusion); Count IV (Damage to Property exclusion); Count V ("Your work" exclusion); Count VI (Damage to "Your Product" exclusion); Count VII (Products-completed operations hazard); Count VIII ("Damaged to Impaired Property or Property Not Physically Injured" exclusion); Count IX ("Recall of Products, Work or Impaired Property" exclusion). *See, generally,* Compl. [DE-1].

*and Cas. Co.*, 698 So.2d 618, 620 (Fla. 2d DCA 1997)).

As an initial matter, the Court agrees with the parties that no disputed issue of material fact exists and concludes, as a matter of law, that the Smiths' claims fall completely within the Hazardous Materials Exclusion.[5]  The policies are clear and unambiguous and preclude coverage for liability related to hazardous materials and/or pollutants, which the Policies define as gaseous irritants or contaminants.  The allegations of the Smiths' MDL Complaint demonstrate that the all of their damages and injuries arise from the "sulfides and other noxious gases" released from the Chinese manufactured drywall.  That the "sulfides and other noxious gases" constitute irritants or contaminants under the Policy is readily apparent.  The Smiths describe these "sulfides and other noxious gases" as "extremely corrosive," "unreasonably dangerous," "hazardous," and "toxic."  Further, these "sulfides and other noxious gases" caused damage to property (corroding electronic appliances, electrical wiring and metal surfaces in their home) and personal injuries (eye irritation, sore throat and cough, nausea, fatigue, shortness of breath, fluid in the lungs, and/or neurological harm).  Thus, it is inescapable that the "sulfides and other noxious gases" released by the Chinese manufactured drywall in the Smiths' residence plainly qualify as gaseous irritants and contaminants.[6]

Based on the foregoing, the Court finds that the Smiths have alleged a "discharge, dispersal, seepage, migration, release or escape of 'hazardous materials'" within the meaning of

---

[5]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)(Summary judgment is proper "if there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.").

[6]"Contaminant" and "irritant" are not defined in the Policy. Webster's Dictionary defines "contaminant" as "something that contaminates" which, in turn, is defined as "[to] make inferior or impure by mixture." Webster's Third New International Dictionary Unabridged 491 (1993). Webster's Dictionary defines "irritant" as "an agent by which irritation is produced." Webster's at 1197.

the exclusion. *See* Compl., Ex E, (A) Sect. I [DE 27-1]. Moreover, the "sulfides and other noxious gases" are gaseous irritants and contaminants and therefore fall squarely within the broad definition of "pollutants" provided in the Policies. On this record, the Court finds that the Smiths' allegations of injury and damage in the MDL Complaint are cast solely and entirely within the Hazardous Materials Exclusion. This finding is consistent with other decisions from this District and others cited by Colony. *See, e.g., Gen. Fid. Ins. Co.*, 2011 WL 3962646 at *5 (compounds released by sulfur and strontium from Chinese drywall are pollutants within the pollution exclusion); *CDC Builders, Inc. v. Amerisure Mut. Ins. Co.,* No. 10-21678, 2011 WL 4454937 (S.D. Fla. Aug. 16, 2011)(Gold, J.)(same); *Travco Ins. Co. v. Ward*, 715 F. Supp. 2d 699 (E.D. Va. 2010) (sulfur gases released from Chinese drywall are pollutants as defined by a homeowners insurance policy containing a pollution exclusion). Thus, the Smiths' claims are excluded from coverage and Colony has no duty to defend or indemnify Total Contracting unless there exists some merit to the Smith's contention that, based on all of the exclusions and limitations cited by Colony in the declaratory judgment complaint, coverage under this Policy of insurance is illusory. As set forth below, the Court finds no support for the Smiths' contention.

The Smiths are correct that as a general proposition of law, when policy provisions, limitations, or exclusions completely contradict the insuring provisions, insurance coverage becomes illusory. *See, e.g., Purrelli*, 698 So.2d at 620. The *Purrelli* decision is the only case the Smiths' cite in support of their illusory coverage argument, but any reading of that decision reveals that it does not support the expansive rendering of insurance policies as illusory as suggested by the Smiths. In *Purrelli*, the plaintiff chiropractor was sued for invasion of privacy for allegedly taking inappropriate videos of a patient during chiropractic sessions. *Id.* at 619.

The insurer obtained a declaratory judgment that the insurance policy did not provide coverage for invasion of privacy. The appellate court reversed finding the policy ambiguous because it provided coverage for specified intentional torts, but simultaneously excluded coverage for intended acts. *Id.* The *Purrelli* court noted that "[w]hen limitations or exclusions completely contradict the insuring provisions, insurance coverage becomes illusory." *Id.* at 620. The court indicated that an insurance policy that provides coverage for specifically enumerated intentional torts, but only if they are committed unintentionally, is "complete nonsense." *Id.*

The proposition of law illustrated in *Purrelli* - that insurance policies are illusory where the exclusions completely contradict the insuring provisions - has little application here. The parties' Policy purports to provide coverage for seemingly wide-range of business activities described as "the contractors-subcontracted work." *See* Compl., Ex E [DE 27-1, p. 11 of 48]. The exclusion relied on by Colony, the Hazardous Materials Exclusion, precludes coverage for injury and damages caused by certain hazardous materials specifically defined in the Policy. *Id.* at p. 12 of 48. These two sections do not contradict one another nor are they, when read together, "complete nonsense." *Purrelli*, 698 So.2d at 620. If they were, then every policy that contained a Hazardous Materials Exclusion would be illusory. Moreover, this is not a case like *Purrelli* where an exclusion *completely* contradicted an insuring provision. For that to be the case the Policy would need to expressly cover damages from hazardous materials and simultaneously exclude damages arising from hazardous materials. That, however, is not the language of the Policy at issue. Accordingly, the exclusion does not completely contradict the insuring

provisions and *Purrelli* is inapposite.[7]

What remains of the Smiths' argument is that the sheer number of exclusions cited in Colony's complaint for declaratory relief, standing alone, establishes that the coverage here is illusory. *See, e.g.*, Resp., pp. 1–2 [DE-55]. The Smiths, however, cite no case law in support of this unique argument and, instead, simply conclude that the nine exclusions cited by Colony "leaves one hard-pressed to imagine any plausible scenario in which liability coverage would be available to [Total Contracting]." Reply, p. 3 [DE-59]. The Smiths cite no case law because none exists to support their argument. Courts do not simply count the number of arguments an insurance company advances against providing coverage and conclude that when the number of arguments exceed eight, for example, coverage must be illusory. The adjudication of insurance coverage disputes does not lend itself to mathematical computations. Moreover, it would be a strange case indeed where an insurance company, attempting to deny coverage, failed to raise every argument against coverage available for fear that surpassing some arbitrary number of arguments would doom their case. The law is not consistent with the Smiths' suggestion that there should be a bright-line rule for finding coverage illusory based on the number of Counts in an insurer's declaratory judgment complaint.

## III.   CONCLUSION

No genuine issue of material fact exists, and, as a matter of law, the Hazardous Materials Exclusion applies and excludes coverage for the Smiths' injuries and damages. Colony is

---

[7]In its Response to the Smiths' summary judgment motion, Colony suggested several hypothetical factual scenarios that could result in coverage under the policies, including one where the Chinese manufactured drywall falls on the Smiths while they were sitting at the dinner table. *See* Response, pp. 13-14 [DE-56]. The Smiths ignored these hypotheticals in their Reply brief and merely repeated their arguments that the "insured bought the proverbial 'pig in a poke,' and received no insurance coverage for the premiums." Reply, pp. 3-4 [DE-59].

entitled to a declaratory judgment that it has no duty to defend, and therefore no duty to

indemnify, Total Contracting for the claims raised by the Smiths. Therefore, the Court will grant

Colony's motion for summary judgment. Accordingly, it is

ORDERED THAT:

(1)  Plaintiff Colony Insurance Company's Motion for Final Summary Judgment
     [DE-53] is GRANTED.

(2)  The Court shall enter judgment in favor of Plaintiff and against Defendants by
     separate order.

(3)  Defendants David and Wendy Smith's Motion for Summary Judgment [DE-54] is
     DENIED.

(4)  This case is CLOSED and all other motions are DENIED AS MOOT.

DONE and ORDERED in Miami, Florida, this 18th day of October, 2011.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:  All Counsel of Record